# No. 24-3014

# In the United States Court of Appeals
## FOR THE SIXTH CIRCUIT

MICHAEL D. JOHNSON, individually and as representatives of a class of participants and beneficiaries on behalf of the Parker Retirement Savings Plan; MATTHEW COLLARO, individually and as representatives of a class of participants and beneficiaries on behalf of the Parker Retirement Savings Plan; JOHN M. BERG; MALLIKARJUN B. KANDULA; TYLER L. SEAMONS

*Plaintiffs - Appellants*

v.

PARKER HANNIFIN CORPORATION; BOARD OF DIRECTORS FOR PARKER HANNIFIN CORPORATION; HUMAN RESOURCES AND THE COMPENSATION COMMITTEE OF THE BOARD OF DIRECTORS FOR PARKER HANNIFIN CORPORATION; PARKER TOTAL REWARDS ADMINISTRATION COMMITTEE; JOHN DOES, 1-14

*Defendants - Appellees*

On Appeal from the United States District Court for the Northern District of Ohio
No. 21-cv-256, The Honorable Bridget Meehan Brennan

## APPELLEES' MOTION TO STAY THE MANDATE

KERI L. ENGELMAN
JOSHUA ADLER
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110
(617) 341-7700

CHRISTOPHER J. BORAN
KEVIN F. GAFFNEY
MORGAN, LEWIS & BOCKIUS LLP
110 N. Wacker Drive
Chicago, IL 60601
(312) 324-1000

MICHAEL E. KENNEALLY
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-3000

*Counsel for Parker-Hannifin Corporation, the Board of Directors for Parker-Hannifin Corporation, the Human Resources and the Compensation Committee of the Board of Directors for Parker-Hannifin Corporation, and Parker Total Rewards Administration Committee*

# DISCLOSURE OF CORPORATE AFFILIATIONS
# AND FINANCIAL INTEREST

Pursuant to Sixth Circuit Rule 26.1, Parker-Hannifin Corporation, the Board of Directors for Parker-Hannifin Corporation, the Human Resources and the Compensation Committee of the Board of Directors for Parker-Hannifin Corporation, and Parker Total Rewards Administration Committee make the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

    No. Defendant Parker-Hannifin Corporation is the only publicly owned corporation affiliated with these parties.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

    Yes. American International Group, Inc. ("AIG") may have a financial interest in the outcome by virtue of an insurance policy on which Parker-Hannifin is the named insured.

Dated: February 18, 2025                     s/ Christopher J. Boran
                                             CHRISTOPHER J. BORAN

                                             *Counsel for Appellees*

i

## APPELLEES' MOTION TO STAY THE MANDATE

In accordance with Rule 41(d) of the Federal Rules of Appellate Procedure and Rule 41 of this Court's Rules, Appellees ask the Court to stay the issuance of the mandate in this appeal until the Supreme Court of the United States resolves Appellees' anticipated petition for a writ of certiorari. The Court denied rehearing by an order dated February 12, 2025. This motion is timely under this Court's Rule 41(b) because it is filed within seven days of that order. By operation of Rule 41(b) of the Federal Rules of Appellate Procedure, the filing of this motion automatically stays issuance of the mandate until this Court resolves the motion.

## BACKGROUND

To help its employees save for retirement, Parker-Hannifin Corporation sponsors a defined contribution plan ("the Plan"). Among other offerings, the Plan offered the Northern Trust Focus Funds (the "Focus Funds") as its target date fund option between 2014 and 2019. Plaintiffs allege that Defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA") by imprudently retaining the Focus Funds despite alleged underperformance in comparison to alternative options that the Plan could have offered instead and the S&P target date fund benchmark.

The district court dismissed this claim by applying precedent from this Court and from other circuits, including *Meiners v. Wells Fargo & Co.*, 898 F.3d 820 (8th

Cir. 2018).  As the district court observed, the Eighth Circuit stressed in *Meiners* that an ERISA plaintiff cannot successfully state a claim for breach of the duty of prudence merely by alleging underperformance in comparison to alternatives.  The plaintiff must also allege that the alternative shared the same investment strategy and thus constitute a meaningful benchmark.  *Meiners*, 898 F.3d at 823-24.  The district court noted that the complaint in this case "does not contain any allegations about the Focus Funds' . . . investment strateg[y]" or the investment strategies of the purported comparators.  Memorandum Opinion, RE 53, PageID # 1629-30.

This Court reversed the district court's decision—over Judge Murphy's dissent.  In doing so, the panel majority held that a meaningful benchmark is "not required" to plead an imprudent-investment claim based on relative underperformance.  Op. 13.  It also held that the S&P benchmark was sufficiently meaningful, rejecting Judge Murphy's argument that a meaningful benchmark requires allegations about "its risk profile, bond-to-equity ratio, [or] investment strategy."  Op. 15.

Defendants filed a timely petition for rehearing en banc on December 18, 2024.  On December 30, 2024, the Court requested a response to Defendants' petition for rehearing en banc.  The petition for rehearing was denied on February 12, 2025.  As a result, the mandate's ordinary issuance date absent any stay would be February 19, 2025.  FED. R. APP. P. 41(b).

2

# ARGUMENT

The Federal Rules of Appellate Procedure authorize a party to "move to stay the mandate pending the filing of a petition for a writ of certiorari in the Supreme Court." FED. R. APP. P. 41(d)(1). The moving party "must show that the petition would present a substantial question and that there is good cause for a stay." *Id.*; *accord* 6th Cir. R. 41(a). Both showings are readily made here.

## I. Defendants' petition will present a substantial question of federal law.

This Court has observed that "[a]n appeal raises a substantial question when it presents a close question or one that could go either way." *United States v. Kincaid*, 805 F. App'x 394, 395 (6th Cir. 2020) (citation, brackets, and quotation marks omitted). The diverging opinions in this case readily show that the issues present a close question or one that could go either way. The district court and Judge Murphy concluded that Plaintiffs' complaint failed to state a claim for relief, applying not only this Court's precedent but also the standards other circuits use to assess ERISA complaints. Although the panel majority disagreed, the various opinions at a minimum show that reasonable jurists can disagree over these issues.

When evaluating motions to stay the appellate mandate, courts may consider whether there is a reasonable probability that the Supreme Court will grant certiorari to review the question. Defendants' forthcoming petition will also present a substantial question viewed through that lens. One of the circumstances in which

3

the Supreme Court will grant certiorari is when "a United States court of appeals has entered a decision in conflict with the decision of another United States court of appeals on the same important matter." SUP. CT. R. 10(a). Such a circuit split exists here. The Court held that ERISA plaintiffs can raise an inference of imprudence based on performance comparisons to some investment benchmark without alleging that their comparison is to a "meaningful benchmark." Op. 13; *see id.* ("[A] meaningful benchmark is not required to plead a facially plausible claim of imprudence."). As Judge Murphy noted, holding that plaintiffs raising claims like Plaintiffs' underperformance claim do not need to plead a meaningful benchmark "create[s] a circuit split." Dissent 37 (citing cases from the Seventh, Eighth, and Tenth Circuits).

Although the Court ruled, in the alternative, that Plaintiffs did plead a meaningful benchmark, the Court's conception of a meaningful benchmark only deepens the circuit conflict. The Court found a meaningful benchmark despite the absence of allegations that other precedent requires for a benchmark to be meaningful. In particular, Plaintiffs failed to allege either (a) that their purported meaningful benchmark had a "risk profile, bond-to-equity ratio, and investment strategy" that matched those of the challenged Plan investments, Op. 15, or (b) that the challenged Plan investments were "designed to match" the purported benchmark, Op. 16. The Court's willingness to find a meaningful benchmark without such

4

allegations conflicts with, at a minimum, the Eighth Circuit's meaningful-benchmark test.  In *Meiners*, the Eighth Circuit affirmed dismissal of a claim for reasons that equally compel affirmance here:  the plaintiff compared the challenged investment to a "fund with a different investment strategy," and the challenged investment had a "higher allocation of bond[s]" than the comparator.  898 F.3d at 823 & n.2.  In this way, the *Meiners* plaintiffs' failure to make these apples-to-apples comparisons about investment strategy and bond-to-equity ratios doomed their pleading.  But this Court looked past Plaintiffs' failure to make such comparisons in this case.

True, a benchmark might be deemed meaningful in the Eighth Circuit when the "complaint states" that the challenged investment was "designed to track" it.  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009); *see also Matousek v. MidAmerican Energy Company*, 51 F.4th 274, 281 (8th Cir. 2022) ("The reason why those two comparisons [in *Braden*] turned out to be 'meaningful' was that tracking the market index was the *stated investment goal* of the fund the plaintiffs challenged." (emphasis added) (citation omitted)).  But this Court rejected that restriction.  It ruled that Plaintiffs' complaint did not need to "specifically articulate that the Focus Funds [*i.e.*, challenged investments] were designed to match the S&P target date fund benchmark [*i.e.*, allegedly meaningful benchmark] in particular."  Op. 16.  There is no dispute that, as Judge Murphy observed, Plaintiffs'

5

complaint "does not allege that the Focus Funds were designed to track the S&P target-date benchmark." Dissent 38. So under the Eighth Circuit's meaningful-benchmark test, Plaintiffs' allegations fail to state a claim.

The Court's departures from its sister circuits—both on the higher-level question of whether a meaningful benchmark is required for these types of allegations, and on the more specific question of what allegations suffice to plead a meaningful benchmark—are likely to get the Supreme Court's attention and create a reasonable probability of a cert grant. The Court has often noted that one of ERISA's core objectives is "to ensure that plans and plan sponsors would be subject to a uniform body of benefits law." *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 86 (2020) (citation omitted). Congress wanted to induce employers to establish benefit plans "by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred." *Conkright v. Frommert*, 559 U.S. 506, 516 (2010) (citation omitted). A split of authority within the circuits on what it takes to plead an ERISA claim defeats that core statutory objective. So it is no surprise that the Supreme Court regularly grants certiorari to resolve circuit splits over ERISA pleading requirements. *See, e.g.*, *Cunningham v. Cornell Univ.*, 145 S. Ct. 118 (2024); *Hughes v. Nw. Univ.*, 141 S. Ct. 2882 (2021); *Ret. Plans Comm. of IBM v. Jander*, 139 S. Ct. 2667 (2019). And this issue has significant legal importance, as

6

is clear from the amicus brief filed by six organizations in support of en banc rehearing.

For all these reasons, Defendants' petition for certiorari will raise substantial questions for the Supreme Court's review.

## II.     Good cause exists for a stay.

In addition, there is good cause for a stay. Allowing Plaintiffs to proceed with the litigation of their claims even though the Supreme Court might hold that their claims fail to leave the starting gate would waste both judicial and party resources.

Particularly in the context of ERISA, courts recognize that "litigation expenses" can upset the balance that Congress struck between employer and participant interests in its regulation of employee benefit plans. *Frommert*, 559 U.S. at 517. "Indeed, the prospect of discovery in a suit claiming breach of fiduciary duty is ominous, potentially exposing the ERISA fiduciary to probing and costly inquiries and document requests about its methods and knowledge at the relevant times." *PBGC ex rel. St. Vincent Cath. Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013). Such asymmetrical litigation expense "elevates the possibility that 'a plaintiff with a largely groundless claim [will] simply take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value, rather than a reasonably founded hope that the discovery process will reveal relevant evidence.'" *Id.* (citation omitted).

And here, even if Plaintiffs' share-class claim ultimately moves forward, the presence (or not) of their underperformance claim will have a large effect on the scope of any permitted fact and expert discovery, as well as the parties' respective positions over a potential settlement.

Conversely, a brief stay will not cause undue prejudice to Plaintiffs. Under Supreme Court rules, the petition for writ of certiorari would be due no later than May 13, 2025, which is 90 days from February 12. *See* SUP. CT. R. 13.1. And so Plaintiffs in all likelihood would face a stay lasting just a few months if the Court denies review. Although the stay would be longer if the Court accepts review, even then the risk of any undue prejudice to Plaintiffs is minimal because district courts have discretion to award prejudgment interest in ERISA cases in accordance with traditional equitable principles. *See, e.g.*, *Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 985 (6th Cir. 2000).

## CONCLUSION

For all these reasons, the Court should stay the issuance of its mandate for ninety days to permit the filing of a petition for certiorari and then, after the filing of the petition, should extend the stay further until the Supreme Court's final disposition of the case.

Dated:  February 18, 2025

Respectfully submitted,

*s/ Christopher J. Boran*
CHRISTOPHER J. BORAN
KEVIN F. GAFFNEY
MORGAN, LEWIS & BOCKIUS LLP
110 N. Wacker Drive
Chicago, IL 60601
(312) 324-1000

MICHAEL E. KENNEALLY
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC  20004
(202) 739-3000

KERI L. ENGELMAN
JOSHUA ADLER
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA  02110
(617) 341-7700

*Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Rule 27(d)(2)(A) of the Federal Rules of Appellate Procedure because it contains 1,864 words, excluding the parts of the motion exempted by Rule 27(a)(2)(B) and Rule 32(f).

This motion complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.


Dated: February 18, 2025                    *s/ Christopher J. Boran*
                                            CHRISTOPHER J. BORAN

                                            *Counsel for Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of February, 2025, a copy of the foregoing was filed electronically through this Court's CM/ECF system, which sent a notice of electronic filing to counsel of record.

*s/ Christopher J. Boran*
CHRISTOPHER J. BORAN

*Counsel for Appellees*
